# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | | |
|---|---|---|
| **LAUREL L. WINDHAM** | * | **CIVIL ACTION NO. 07-1463** |
| **VERSUS** | * | **JUDGE JAMES** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

### Background & Procedural History

Laurel L. Windham filed the instant applications for Disability Insurance Benefits and Supplemental Security Income payments on September 29, 2005. (Tr. 68-70, 274-276). She alleged disability since May 24, 2005, due to seizures, anxiety, multiple strokes, post traumatic stress disorder, manic depression, and a permanent limp. (Tr. 68, 77). The claims were denied at the initial stage of the administrative process. (Tr. 51-55). Thereafter, Windham requested and received a July 21, 2006, hearing before an Administrative Law Judge ("ALJ"). (Tr. 277-293).[1] However, in an April 16, 2007, written decision, the ALJ found at Step Five of the sequential

---

[1] The ALJ held a supplemental hearing on February 14, 2007. (Tr. 294-309).

evaluation process that Windham was able to make an adjustment to work that exists in substantial numbers in the national economy. (Tr. 11-24). Windham appealed the adverse decision to the Appeals Council. On July 6, 2007, the Appeals Council denied Windham's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 5-7).

On September 4, 2008, Windham sought review before this court. She alleges the following errors:

(1)     the ALJ's residual functional capacity assessment is not rationally based; and

(2)     the ALJ failed to acknowledge and evaluate the opinion of a non-examining state agency physician.

## **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible

medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1)     An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)     An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

3

(3)     An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)     If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5)     If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## <u>Analysis</u>

The ALJ found at Step Two of the sequential evaluation process that Windham suffers from severe impairments of multiple stroke syndrome secondary to previous hypoxic/ischemic injury in the perinatal period, dysthymic disorder, and post-traumatic stress disorder.  (Tr. 17, 23).  The ALJ concluded, however, that these impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process.  (Tr. 17-18, 23).

The ALJ next determined that Windham retained the residual functional capacity to

perform work at all exertional levels reduced by marked limitations in her ability to respond

appropriately to work pressures in a usual setting and respond appropriately to changes in a

routine work setting, the need to avoid being around unprotected heights or to be in proximity to

dangerous moving machinery. (Tr. 21, 23). Although the record arguably contains substantial

evidence to support the ALJ's residual functional capacity assessment,[2] plaintiff contends that the

ALJ's assessment is flawed because it is inconsistent with his findings at Step Three of the

sequential evaluation process.

Plaintiff emphasizes that when the instant ALJ applied the psychiatric review technique,

he found that plaintiff suffers marked limitation in the area of social functioning. (Tr. 18).[3]

However, in his residual functional capacity determination and resulting hypothetical to the

vocational expert, the ALJ inexplicably assigned no limitations in the area of social functioning.

(Tr. 21).[4] Other circuits have found reversible error when the ALJ's hypothetical to the

vocational expert failed to include limitations recognized by the ALJ during application of the

psychiatric review technique. *See, Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003)

(ALJ's hypothetical to vocational expert failed to include finding that plaintiff suffered frequent

deficiencies of concentration, persistence, or pace); *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir.

---

[2] *See*, Tr. 249-251.

[3] To evaluate the severity of mental impairments, the regulations require that a
psychiatric review technique form be completed during the initial and reconsideration phases of
the administrative review process. 20 C.F.R. § 1520a(e). The psychiatric review technique rates
the degree of functional limitation in four broad areas: activities of daily living; social
functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §
1520a(c). The ALJ must incorporate the pertinent findings and conclusions of the psychiatric
review technique into his decision. *Id.*

[4] Plaintiff's representative proffered a hypothetical to the vocational expert which
contemplated *moderate* limitations to social functioning. (*See*, Tr. 298, 302).

1996) (ALJ's hypothetical to vocational expert failed to include psychiatric review technique finding that plaintiff "often" had deficiencies of concentration, persistence, or pace); *Ramirez v. Barnhart*, 372 F.3d 546, 554-555 (3rd Cir. 2004) (ALJ's hypothetical did not include ALJ's observation that plaintiff often suffered from deficiencies in concentration, persistence, or pace).[5]

Here, the ALJ's finding that plaintiff suffered marked limitation of social functioning at Step Three of the sequential analysis is inconsistent with the ALJ's residual functional capacity assessment. This unexplained dichotomy undermines the vitality of the ALJ's residual functional capacity assessment and subverts the basis for the ALJ's hypothetical to the vocational expert.[6] Accordingly, the Commissioner did not carry his burden of establishing that Windham could

---

[5] As in *Ramirez, supra*, the Commissioner relies upon language in SSR 96-8p to imply that the psychiatric review technique is only relevant at Steps Two and Three of the sequential evaluation process. *Ramirez, supra*; Comm.'r Memo., pgs. 4-5 (citing SSR 96-8p). However, the *Ramirez* court considered and rejected the Commissioner's interpretation of SSR 96-8p. *Ramirez*, 372 F.3d at 555.

[6] The Commissioner argues that to the extent the ALJ should have included a marked limitation in social functioning in his residual functional capacity determination, the omission was harmless because according to the Dictionary of Occupational Titles, the jobs identified by the vocational expert do not require "significant" interaction with people. (Comm.'r Memo., pgs. 7-8). However, once the ALJ determines that a claimant suffers from a nonexertional impairment which prevents the claimant from performing past work and the full range of other available work, the Commissioner must produce "expert vocational testimony or other similar evidence" to establish that jobs exist in the national economy that the claimant can perform. *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986). The Dictionary of Occupational Titles does not constitute "other similar evidence." *Id*.

The court further observes that the instant ALJ seems to have inappropriately answered the hypothetical that he posed to the vocational expert. (Tr. 298-300). In response to the ALJ's hypothetical, the vocational expert initially stated that there would be no jobs that plaintiff could perform. *Id*. The ALJ apparently did not like the answer because he proceeded to provide examples of jobs in the restaurant industry that he considered to be stressful and others that were not. *Id*. He thereupon asked the vocational expert to identify jobs beginning with "dishwasher" that were not stressful. *Id*. In so doing, the ALJ plainly usurped the role of the vocational expert and unduly influenced her testimony. Such practices tend to undermine the credulity and impartiality of the vocational expert.

perform available work despite her impairments and associated limitations. *Boyd v. Apfel*, 239

F.3d 698, 708 (5th Cir. 2001).[7]

Although not directly raised by plaintiff, the undersigned further emphasizes that the

ALJ's unexplained finding that plaintiff suffers marked difficulties in social functioning

materially affects the basis for his Step Three determination. In his application of the psychiatric

review technique, the ALJ found that plaintiff suffers marked difficulties in maintaining social

functioning. None of the examining and non-examining mental health specialists indicated that

plaintiff suffers marked limitation in social functioning. (*See e.g.*, Tr. 188-208, 243-244, 246-

251). Rather, the only plausible sources for the ALJ's determination that plaintiff suffers marked

difficulties in maintaining social functioning is plaintiff's own testimony, and an October 31,

2005, To Whom It May Concern letter from plaintiff's treating physician, Steven McMahan,

wherein he stated that Windham's social interaction was "very poor." (Tr. 104, 186-187).[8] Yet,

plaintiff testified not only to marked limitations in social functioning, but also *inter alia* to severe

restrictions in her activities of daily living. (Tr. 283-285). Moreover, McMahan further opined

that plaintiff's adaptation, concentration, and memory were "very poor." (Tr. 186-187, 283-285).

---

[7] The court need not reach plaintiff's remaining assignment of error. However, the ALJ's alleged failure to evaluate the opinion of the non-examining state agency physician was likely harmless because the vocational expert addressed a hypothetical which incorporated the additional limitations assigned by the physician. (*See*, Tr. 191-192, 301-302). Nonetheless, the ALJ will be able to discuss this evidence upon remand.

[8] In his brief, the Commissioner contends that there is good cause to reject the limitations of mental functioning recognized by Dr. McMahan. "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir.1995) (citation omitted). However, an ALJ cannot reject a medical opinion without an explanation supported by good cause. *See, Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir.2000) (citations omitted). While the Commissioner may be correct, the instant ALJ did not even mention Dr. McMahan. If anything, the ALJ implicitly adopted at least one of McMahan's limitations.

The ALJ did not explain why he essentially decided to credit one of the limitations identified by plaintiff and her treating physician, but not others. The ALJ's failure to adequately discuss the evidence and explain the basis for his Step Three findings is an error that affects plaintiff's "substantial rights" and requires remand. *See, Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).[9]

For the reasons assigned above,

**IT IS RECOMMENDED** that the matter be **REVERSED and REMANDED** for further proceedings consistent herein.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

---

[9] If a claimant suffers marked limitations of functioning in more than one area, then she will have satisfied the "B" criteria for Listings 12.04 and 12.06, 20 C.F.R. Subpart P, App. 1. This prospective finding, when coupled with the ALJ's associated determination that plaintiff satisfies the "A" criteria of Listings 12.04 and 12.06, would compel a finding of disability at Step Three of the sequential evaluation process.

THUS DONE AND SIGNED at Monroe, Louisiana, this 14th day of July, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE